IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


LEATRA HARPER,

                    Plaintiff,

            vs.                                Civil Action 2:14-cv-986
                                               Magistrate Judge King

DEPARTMENT OF THE ARMY
HUNTINGTON DISTRICT, CORPS OF
ENGINEERS,

                    Defendant.


OPINION AND ORDER

        This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552, in which plaintiff, acting as the representative of a

group of concerned citizens, seeks information regarding horizontal

hydraulic fracturing in the Muskingum Watershed Conservancy District

("MWCD").  This matter is now before the Court, with the consent of

the parties pursuant to 28 U.S.C. § 636(c), for consideration of

*Defendant's Motion for Summary Judgment* ("*Defendant's Motion*"), ECF

18.  Plaintiff opposes *Defendant's Motion*, *Response in Opposition to

Defendant's Motion for Summary Judgment* ("*Plaintiff's Response*"), ECF

21, and defendant has filed a reply, *Defendant's Reply*, ECF 24.

I.

        On June 23, 2012, plaintiff, acting on behalf of Southeast Ohio

Alliance to Save Our Water, submitted to the U.S. Army Corps of

Engineers ("USACE") a FOIA request for "All emails and correspondence

from 1/1/09 to [June 23, 2012], between the [MWCD] in New

Philadelphia, Ohio, and the USACE, regarding USACE involvement in

leasing mineral rights for horizontal hydrofracking and potential
water sales." *Declaration of Angela D. McClellan* ("*McClellan
Declaration*"), attached to *Defendant's Motion* as Exhibit A, at ¶ 1,
Attachment 1. Plaintiff specifically requested "all documentation,
justification and correspondence used to determine that a full 216
study was not required as a result of proposed water withdrawals from
the MWCD." *Id*. The USACE, Huntington District, Office of Counsel
("CELRH-OC") acknowledged receipt of plaintiff's request on June 26,
2012. *Id*. at ¶ 6, Attachment 2. CELRH-OC initially released
documents on September 11, 2012 but, invoking FOIA Exemption 5,
withheld 200 pages.[1] CELRH-OC found and released 60 additional pages of
documents on November 16, 2012, two pages on February 28, 2013, and 14
pages on March 4, 2013. *Id*. at ¶¶ 11, 13-14, Attachments 8, 10, 11.

Plaintiff appealed the response to the Office of the Secretary of
the Army. *Id*. at ¶¶ 9, 12, Attachments 6, 9. Plaintiff's appeal was
denied on February 11, 2014. *Id*. at ¶ 16, Attachment 13. Plaintiff
was advised that the withheld documents are "pre-decisional because
they were submitted prior to, and in anticipation of, decisions to be
made regarding hydrofracking permitting," and "deliberative because
[the information withheld] encompasses expressions of opinions and
analysis by MWCD and USACE personnel regarding hydrofracking." *Id*. at
Attachment 13.

---

[1] In her summary of the September 11, 2012 response to plaintiff's FOIA
request, Ms. McClellan avers that 288 pages had been initially withheld.
*McClellan Declaration,* ¶ 7. In fact, the September 11, 2012 response to
plaintiff's FOIA request, *McClellan Declaration*, Attachment 4, indicates that
200 pages had been withheld pursuant to FOIA Exemption 5. However, this
inconsistency is apparently insignificant because plaintiff does not dispute
the accuracy of "[d]efendant's recitation of the specific history of the
requests . . . .[,] the copies of said requests, and the agency's responses. .
. ." *Plaintiff's Response*, p. 2.

**II.**

"[U]nder the FOIA an agency must disclose all records requested by 'any person,' 5 U.S.C. § 552(a)(3), unless the information sought falls within one of the nine enumerated exemptions listed in section 552(b)." *Vaughn v. United States*, 936 F.2d 862, 865 (6th Cir. 1991). "These exceptions are to be narrowly construed," *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 543 (6th Cir. 2001) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001)), "and the burden is on the agency to justify its action." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). "[T]he structure of the Act reflects 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Id.* (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 360-61 (1976)).

In the case presently before the Court, defendant asserts that it has properly withheld documents pursuant to Exemptions 5 and 6, *see* 5 U.S.C. §§ 552(b)(5), (b)(6). *Defendant's Motion*, pp. 8-11. Defendant "now moves for summary judgment . . . on the ground that no information has been improperly withheld from Plaintiff." *Id.* at *PAGEID* 69.

"As most challenges to an agency's use of a FOIA exemption involve purely legal questions, district courts typically resolve these cases on summary judgment." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (citing *Rugiero*, 257 F.3d at 544). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination,

3

the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To prevail on summary judgment in a FOIA action, "the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption." *Rimmer*, 700 F.3d at 255 (quoting *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011)). "[T]he resolution of an exemption's applicability at the summary-judgment phase 'creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA.'" *Id.* (quoting *Rugiero,* 257 F.3d at 544). The government therefore "must provide evidence that enables the court to make a reasoned, independent assessment of the claim of exemption." *Vaughn*, 936 F.2d at 867. The goal is to "'(1) assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information.'" *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). Although "no particular method of achieving those requirements is mandated," *id.*, an agency will ordinarily "offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. F.B.I.,* 41 F.3d 238, 242-43 (6th Cir. 1994)). Absent evidence that contradicts the

4

government's affidavits or establishes bad faith, "the role of the district court is to review the adequacy of the affidavits." *Rugiero*, 257 F.3d at 551.

**III.**

In the case presently before the Court, defendant withheld documents pursuant to Exemption 5 and redacted the names of government employees pursuant to Exemption 6. Plaintiff challenges defendant's reliance on Exemption 5. Plaintiff does not challenge the reasonableness or adequacy of the searches performed by defendant, nor does she challenge the redaction of names pursuant to Exemption 6. *Plaintiff's Response*, pp. 7-8, 13-14.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have construed this exception to preserve the recognized evidentiary privileges, such as the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege." *Rugiero*, 257 F.3d at 550. "To come within this exception on the basis of the deliberative process privilege, a document must be both 'predecisional,' meaning it is 'received by the decisionmaker on the subject of the decision prior to the time the decision is made,' and 'deliberative,' the result of a consultative process." *Id*. (quoting *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 940 (6th Cir. 1988)). "Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of an agency, the key issue in applying this exception

5

is whether disclosure of the materials would 'expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (quoting *Schell*, 843 F.2d at 940).

Plaintiff argues that defendant has not shown that the withheld documents are properly classified as intra- or inter-agency communications, that the communications are pre-decisional, or that the communications were part of the deliberative process. Plaintiff also argues that defendant failed to identify the documents withheld and the reasons for withholding the documents with the degree of specificity sufficient to permit this Court to determine whether Exemption 5 was properly invoked.

Defendant offers the declaration of Christopher D. Mays, a geologist with the USACE division "tasked with reviewing and evaluating proposals for" hydrofracking. *Declaration of Christopher D. Mays* ("*Mays Declaration*"), attached to *Defendant's Motion* as Exhibit B, ¶ 1. Mr. Mays explains that, since 1934, the USACE and MWCD have worked in partnership in connection with certain reservoir projects. *Id.* at ¶ 4. Specifically, "the USACE has operated the reservoirs for flood risk management and navigation and the MWCD has managed the reservoirs for conservation, recreation, forestry and water supply." *Id.* According to Mr. Mays, the USACE has, since 2010, undertaken a geological study for the purpose of developing a national policy regarding the potential risks to dam and levee safety from hydrofracking. *See id.* at ¶¶ 6-9. Advised that MWCD had requested proposals for oil and gas exploration on its land, the USACE "requested that limited restrictions be incorporated into the proposed

6

lease agreements." *Id.* at ¶ 7. MWCD thereafter leased mineral rights
at certain of its reservoirs, including Clendening Lake, *id.*, and
defendant has obtained information from MWCD as part of its study. *Id.*
at ¶ 8.

> [USACE] has developed a conceptual draft policy which is
> undergoing various reviews and is still pending and prior
> to becoming final will be subject to USACE senior level
> reviews and approval. Data acquired through a study
> initiated by [defendant] for the Clendening Lake [flood
> risk management] project pertaining to dam safety
> implications of [hydrofracking] was made available for
> [defendant's] consideration during the drafting process.

*Id.* at ¶ 9.

With regard to the identification of the documents withheld,
Angela D. McClellan, Budget Analyst for the Planning Center of
Expertise for Inland Navigation and Risk-Informed Economics Division,
explains:

> The majority of records withheld in response to the
> Plaintiff's request designated as FA-12-0140 contained
> documentation of internal communications, pre-decisional
> and draft work, such as discussions of the Huntington
> District's position on MWCD's leasing for hydrofracking for
> shale gas development, which is considered pre-decisional
> until the Huntington District's dam safety geological
> studies have been completed at each project.
>
> . . .
>
> The withheld information constituted communications between
> MWCD and Huntington District personnel. These
> communications were considered pre-decisional because they
> were submitted prior to, and in anticipation of, decisions
> to be made regarding hydrofracking permitting. The
> withheld information was deliberative in its entirety
> because it encompassed expressions of opinions and analysis
> by MWCD and Huntington District personnel regarding
> hydrofracking.

*McClellan Declaration*, ¶¶ 23, 26.[2]

Plaintiff contends, first, that communications between MWCD, a political subdivision of the State of Ohio,[3] and USACE do not qualify for the "inter-agency or intra-agency" exemption because they are or may become adversaries. *Plaintiff's Response,* pp. 3-4. Specifically, plaintiff observes that MWCD was deeded certain land by the United States for "recreation, conservation and reservoir development purposes," and that, under the deed, a failure to fulfill those purposes will result in a reversion of the property to the United States. The grant of oil and gas leases on MWCD land, plaintiff argues, implicates the "reverter clause;" as a consequence, the interests of the USACE and the MWCD "do not necessarily align . . . ." *Id*. at p. 4 (referring to ECF 21-1).[4]

Plaintiff agrees that FOIA Exemption 5 can in certain circumstances apply even to records of communications between a federal agency and an outside consultant. *Plaintiff's Response*, p. 8.

---

[2] The Court understands that, by her reference to "[t]he majority of records withheld," Ms. McClellan intended to exclude only one document, which was generated by the Department of the Interior, Bureau of Reclamation, and which was forwarded to that agency for a "releasability determination." *See* Attachment 4 to *McClellan Declaration*.

[3] O.R.C. Chapter 6101, which governs Ohio conservancy districts, authorizes the organization of conservancy districts for the purpose of, *inter alia*, preventing floods and regulating streams and wetlands situated in one or more Ohio counties. *See* O.R.C. § 6101.04.

[4] This contention has been the subject of other litigation initiated by plaintiff and others. *Leatra Harper, et al. v. Muskingum Watershed Conservancy District, et al.*, (S.D. Ohio); *United States of America ex rel. Leatra Harper v. Muskingum Watershed Conservancy District*, 5:13-cv-2145 (N.D. Ohio). The former action was voluntarily dismissed by plaintiffs. 2:14-cv-2539, Doc. Nos. 34, 35 (S.D. Ohio May 4, 2015). The *qui tam* action remains pending in the United States District Court for the Northern District of Ohio.

Records of communications between a federal agency and a non-federal entity may nevertheless qualify for the "intra-agency" exemption if those communications were "'created for the purpose of aiding the *agency's* deliberative process.'" *Public Citizen, Inc. v. DOJ*, 111 F.3d 168, 170 (D.C. Cir. 1997)(quoting *Dow Jones & Co., Inc. v. Department of Justice,* 917 F.2d 571, 575 (D.C. Cir. 1990))(emphasis in original). Determinative to the issue is whether the communications "played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done." *Klamath Water Users Protective Ass'n*, 532 U.S. at 10.

The *Mays Declaration* confirms that this standard has been met. The USACE and the MWCD are jointly responsible for the administration of the Muskingum Watershed. The USACE, the federal agency charged with formulating national policy regarding the impact of hydrofracking on dam and levee safety, has consulted with MWCD in connection with terms governing oil and gas exploration leases on land deeded to MWCD and, as part of the process of formulating that national policy, the federal agency relies on information generated by MWCD in connection with its leases. *Id.* at ¶¶ 6-9. *See also McClellan Declaration*, ¶ 25 ("The communications between MWCD and the Huntington District were made within the context of th[eir] partnership and involved decisions regarding the administration of the Muskingum Watershed.").

Moreover, the Court concludes that plaintiff's contentions with regard to the "reverter clause" are insufficient to establish that the USACE and MWCD occupy adversarial positions such as to foreclose

9

invocation of the inter- or intra-agency exemption under FOIA. Although a truly adversarial relationship may render the exemption inapplicable, *see Klamath Water Users Protective Ass'n*, 531 U.S. 1, plaintiff has offered no evidence that the United States has ever sought to invoke the "reverter clause" or has otherwise expressed any opinion that the activities of MWCD over the years have been inconsistent with the purposes for which property was deeded to MWCD.

In short, this Court concludes that *Defendant's Motion* satisfies the threshold requirement of Exemption 5, *i.e.,* defendant has established that the documents are properly classified as inter- or intra-agency communications.

The Court also concludes that defendant has identified the withheld documents with the degree of specificity sufficient to permit this Court to determine that the deliberative process privilege of Exemption 5 was properly invoked. Specifically, the communications included in the withheld documents are pre-decisional, and the communications are part of the deliberative process. The *McClellan Declaration* represents that the documents that were withheld "contained documentation of internal communications, pre-decisional and draft work, such as discussions of the Huntington District's position on MWCD's leasing for hydrofracking for shale gas development, which is considered pre-decisional until the Huntington District's dam safety geological studies have been completed at each project." *Id.* at ¶ 23. The *McClellan Declaration* also indicates that the withheld documents "constituted communications between MWCD and

10

Huntington District personnel," that the "communications were considered pre-decisional because they were submitted prior to, and in anticipation of, decisions to be made regarding hydrofracking permitting[,]" and that "[t]he withheld information was deliberative in its entirety because it encompassed expressions of opinions and analysis by MWCD and Huntington District personnel regarding hydrofracking." *Id.* at ¶ 26. The *McClellan Declaration* also states that the withholding of the documents in question advances frank and open discussions on matters of agency policy, protects against premature disclosure of proposed policies and protects against the confusion that might result from the disclosure of reasons that the eventual policy may not in fact adopt. *Id.* at ¶ 24. These representations and assertions are sufficient to establish that the withheld documents relate to the USACE's formulation of national policy pertaining to the effect of hydrofracking on dam safety, *i.e.,* a process that remains on-going. *See Rugiero*, 257 F.3d at 550 (a document is "predecisional" if it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made") (internal quotations omitted). Defendant has likewise adequately established how the withheld documents fit into the deliberative process. *See U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 527 (6th Cir. 2012). Fairly read, the *Mays Declaration and* the *McClellan Declaration* also adequately establish that disclosure of the withheld documents would negatively affect the agency's decision-making process. The premature disclosure of opinions and analyses

11

pertaining to the formulation of national policy on the effects of the controversial process of hydrofracking on dam and levee safety – during the course of the formulation of such policy – would serve only to discourage robust discussion of that policy and would undermine the likelihood of an eventual effective national policy on a matter of great public interest. In short, the withholding of the documents referred to in the *McClellan Declaration* is entirely consistent with the rationale underlying the deliberative process privilege of Exemption 5. *See Klamath Water Users Protective Ass'n*, 532 U.S. at 8 ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protective open and frank discussion among those who make them with the Government. . . .")(quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 (1975)).

Finally, plaintiff contends that, even if Exemption 5 applies, defendant has not provided information sufficient to enable the Court "to determine if any of the documents sought have segregable information." *Plaintiff's Response*, p. 13. To the contrary, the *McClelland Declaration* avers that "[t]he withheld information was deliberative in its entirety because it encompassed expressions of opinions and analysis by MECD and Huntington District personnel regarding hydrofracking." *Id.* at ¶ 26 (emphasis added). In the absence of evidence to the contrary or which establishes bad faith,

this Court concludes that this representation is sufficient. *See Rugiero*, 257 F.3d at 551.

In short, the Court concludes that defendant is entitled to summary judgment.

*Defendant's Motion*, ECF 18, is therefore **GRANTED.**

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**


August 31, 2015                          ___*s/Norah McCann King*___
                                          Norah M$^c$Cann King
                                   United States Magistrate Judge

13